Good morning and welcome to the Ninth Circuit. We've got one case that's been submitted on the brief Burlington Insurance v. German Motors Corporation. We've got two argued cases this morning. We have read your briefs. We look forward to your arguments. The first is Balbuena v. Sullivan. When you're ready, Counsel. May it please the Court, my name is Scott Sugarman. I'm here on behalf of Alexander Balbuena. He was arrested in 2006 at the age of 15. He has been in prison since then. He is serving a sentence of 72 years to life in prison. He was not well-served by his trial and State Appellate Counsel. They missed, in my view, an obvious Miranda violation, which this Court has twice held. He is now serving a sentence of 72 years to life in prison. His trial is, in fact, a constitutional violation in Nody and Bland. But they missed it. He filed an appeal after he denied that the district court denied his habeas petition. While that appeal was pending, this Court remanded the Miranda question back to the district court to decide whether it would consider it. Now, the Miranda question or the voluntariness question? The Miranda question, Your Honor. The voluntariness question was already before you and is before you today. Right. The district court decided that the request to add or reopen the position to amend was a second or successive petition and, therefore, denied the request, not getting to the merits of Miranda. That issue is also before you because you have two appeals before you, Your Honor. The district court's decision, in my opinion, violates both the letter and the spirit of 2244. So the Miranda claim was not raised initially in the petitioner's habeas petition. That's correct? That is correct, Your Honor. He was representing himself, and it was not raised. It had not been raised in the state court. Right. So then on remand, he was filing a motion to amend or a Rule 60 motion to attempt to add the Miranda claim to his habeas petition. Is that correct? That is correct, Your Honor. This Court gave me leave and stayed the appeal so that I filed on his behalf a motion to reopen the proceedings under 60B. I argued there was extraordinary circumstances submitting declarations by counsel that they had become ineffective assistants of counsel, which qualifies under this circuit's rules for extraordinary circumstances. And then I was asked to leave to amend, and I argued that the Miranda claim, in fact, under the Supreme Court's structure of standards, would qualify as a proper amendment. The Court never reached the issue that it's a district court, but rather just said, we're not going to reach the issue. It's second or successive. How do you distinguish? I'm not sure whether you pronounce it Beattie or Beatty. In several ways, Your Honor. First, I think, as the Court's aware, there are – it is bracketed or bookended by two other Ninth Circuit cases, Woods and Goodrum, which both make very clear it's going to follow the Second Circuit precedent in Ching, Grillam, and then later Wobb. It's not so clear to me that, in fact, they do say they're going to follow the Second Circuit precedent. It seems to me that Beattie, on its face, defeats your claim that this – that the district court had to grant the motion to allow it. So what is there in Beattie that doesn't control here, or why exactly is Beattie not controlling – or why does Beattie allow this, in your view? There are several differences between Beattie in this case, which I think is what you're asking me, Your Honor. First, as Woods pointed out and Ching pointed out, the fact that a defendant is pro se, as Mr. Balbuena was, is something to be considered in what we do with it. In Beattie, he had counsel throughout. But more importantly, the Beattie court specifically talked about the chronology of events, which is Mr. Beattie was denied in the district court, the Ninth Circuit denied or didn't affirm what the lower court did, and the Supreme Court denied certiorari two years before he filed his petition, which is now before the court in Beattie. So the whole process of appeal was, in fact, complete two years before. I would direct you back to the opinion where the court says that Mr. Beattie apparently filed lots of petitions, both pro se and with counsel. And so his looks much more like abuse of the writ. So it has a factual circumstance, nothing like here, where the appeal for Mr. Balbuena is still before this court. Indeed, to be decided today, or at least for argument on today, hit the voluntariness question. What do I do with note one in Beattie, which says, today we decide that Beattie cannot use Woods to amend his petition after the district court has ruled and proceedings have begun in this court? Is that, in your view, an overstatement or an imprecise statement? Well, given the facts, it is overbroad. Because the facts it had before it was that the circuit had already denied the appeal and the Supreme Court had denied cert. And two years later, Mr. Beattie raised it. That's certainly not our facts here. So I think it was, in some ways, it's one of those adages lawyers sometimes say, which is bad facts make bad law. Mr. Beattie had made lots of petitions at lots of levels over the course of 15 years. And it looked like, if we had done it in the old system, an abuse of the writ, so the court doesn't have to get to that. But certainly, the second or successive petition standards are that they must have one final, complete decision. And the various circuits, I've cited them in there, including the third most recently this summer, and the eighth and the second. And I submit this Court in Woods, because Woods adopts not only Ching, but Grillon. It specifically cites Grillon, which is two years after Ching, also which Justice Sotomayor signed on to, which makes it very clear that while it's on appeal, it's not final. Now, are there any, let me make sure I phrase the question precisely. Let's assume for the moment that the case law in our circuit is clear, and that the sentence I just read you from the Beattie footnote is not an overstatement, but it says and means as soon as the district court has given us a final ruling on that question, that's then on appeal to us, we're done. In other words, we just disagree with Ching. Are there any other circuits that agree with us, as I just described? The Attorney General has cited, I think, the Eighth Circuit. No, no, the Sixth Circuit that agrees with you with that view, that it's narrow. But I would remind you that after Beattie, this Court decided Goodwin, and it reaffirmed that the analysis in Woods and Grillon is the law of this circuit. It's quite express about that. So whatever Beattie did, I submit to you, is more narrow than the sentence you read. And that given the ---- But factually in both Woods and Goodwin, the Petitioner's claim was still pending in the district court, which is different from what has occurred here. And Beattie draws that distinction in those cases and says this is different. You know, in Beattie, the claim had been resolved in the district court and was pending on appeal, and says this is different from Woods and Goodwin. In both of those cases, the claim is still pending in the district court. Two things, Your Honor. First of all, the intervening Second Circuit decision in Grillon is on appeal. So there's no question there that defendant's case was on appeal in the Second Circuit. That was decided before Woods and was cited in Woods favorably. Secondly, I think ---- Was it cited in Woods for that proposition or for something a little more broad in general? The very point I was going to get to. In order to make its analysis, Justice Sotomayor, then on the Second Circuit, was trying to decide what second or successive means, since it's not cited by statute ---- excuse me, not defined by statute, nor defined by the Supreme Court. And her view was until a case is completed, meaning the appeal is done, that it's not final and, therefore, any other amendment would follow other rules. For example, the amendment rules by the defendant if he's seeking a review. That was her analysis. That's what Woods adopted. And I respectfully suggest that's what Goodrum adopted after Beatty. I believe the sentence, Your Honor, that you cite from the footnote, interesting that it is in the footnote, not in the text of it, but that's where it is, I believe is broader than necessary and conflicts with Woods. And it's this circuit's jurisprudence that one circuit may not ---- one panel may not disagree with an earlier panel. It must accept it unless it goes en banc. And I made that note of that. I think it is making it ---- But I don't ---- I have to disagree with you. I don't think Woods is as broad as you're suggesting. And that the facts are so different in Woods where the claim is still pending in the district court, that the court wasn't holding that the claim is still open, if you will, while on appeal, and so it's not a successive petition. It's just an amendment of what's pending in the district court. So you're suggesting that Woods and this circuit has taken that position in Woods, but I don't think that it has. Where is that in Woods? It's in both. The analysis by Justice Sotomayor talks about what it means to be second or successive. She didn't write Woods. I mean, where is it in ---- I'm sorry. Excuse me. I'm Ching. My apologies. What Woods says is that it's going to adopt the analysis of the Second Circuit citing to both Ching and to Grillam. And in doing so, Grillam was a case in which the defendant's case was on appeal to the circuit. And they said whether it's on appeal or in the district court, it's not second or successive so long as it's in that line. And that's what distinguishes Beatty because, in fact, under those circumstances, the claim by the defendant, which was on appeal, was denied and then denied by cert two years later. So I submit ---- So maybe what you're saying is that sentence I read you from that footnote is dictum, meaning ---- and it's dictum that conflicts with Woods? I respectfully submit that it is both dictum and it's broader than necessary, so that's what dictum is. On the other hand, the statements in Woods would be dictum, too, because Woods does not present the factual scenario that we now have. Under that analysis, I agree with you, Your Honor. But I would just remind this Court again that this Court reaffirmed the primacy of Ching and Woods in its later decision in Goodram. But Ching is not binding in this circuit. Of course not. Nor is Watt. None of the circuit decisions are other than the circuit's decisions or the Supreme  Court's decisions. Right. So we should really be looking at Beatty and Woods and what our circuit has decided in Goodram. And Woods and Goodram are clearly distinguishable in that there were claims pending in the district court. But then this Court would have to rule, it's going to follow that, that a petition is or rather a submission to the Court is second or successive even though it's still pending on appeal. And what this Court does, respectfully, is look at what district court dues and sometimes say you're wrong. So the matter is not final if you use the analysis which is adopted at almost all the courts and most recently in the Third Circuit this summer in Santorelli which, again, was clearly a case on appeal. You don't have to follow Santorelli. It's a different circuit. Well, the Attorney General cites a case from the Sixth Circuit, a case from the Seventh Circuit, and an unpublished decision from the Eleventh Circuit that go the other way. I actually disagree with some of that. There's a long footnote in my reply brief that says that overstates what's there. But I believe there is at least one circuit that would agree with the proposition that once the district court is final, the defendant's further request is that way. It's also quite clear there are probably at least three circuits that go the way that Ching does and Goodram and the later case of Lobb. I'm going to take just a moment and then I'd like to reserve a few moments because I'd like to turn to the voluntariness question and I will be brief about that given the time constraints unless the Court treats me otherwise. I think a key question here is what the California Court of Appeals said was with regard to one sentence, which matters a lot, here's what the sentence was for the officers. We are giving you the opportunity to try and work this through so maybe you can be there for your kid in a few years. It's on page 979 and 980 of the excerpt of record. That immediate, that follows very shortly after he refused to say he had a gun, after they continued to talk about how young he was and he had a special ability to have special kind of training, that they were the only people who could help him. The California Court of Appeals concluded that that wasn't an explicit promise. It doesn't have to be. I believe the California Court of Appeals, in fact, either applied the U.S. Supreme Court precedent improperly or simply its decision was contrary to it. If this Court compares that to Brown from a couple of years ago from this circuit where the discussion was about a baby or not, whether he could see his baby, it's even less clear that they're making any kind of promise. Any 15-year-old with no training would hear the sentence read and say, if I cooperate, if I tell him what I want to know, then I will be able to get out in a few years. And on the next page of the transcript, 981, in fact, he says I had a gun. Okay. I'll reserve the rest of my time with your permission. Let's hear from the other side, and you've got some time. Thank you, Your Honor. Good morning. May it please the Court, this is Jill Thayer for Respondent and appellee. I'll start with just the motion to amend issue. And all I have to say on that is that Beatty does control here. There needs to be a bright line with these cases, and the Second Circuit has chosen one line and the Ninth Circuit has chosen another. Let me ask you a somewhat different question than the one that we've been addressing so far, related, of course, but somewhat different, and that is, assuming we were to write on a clean slate, why should not we adopt the Second Circuit approach? Well, finality is considered one. No, I'm asking you a different question. No, no. Assuming we're writing on a clean slate. Right. Okay. No, no, no. I agree with you. So there's two issues. So one is finality. Right. And finality is, you're talking about policy. What's the policy? Right. Well, I mean, exactly. And so the policy arguments in favor of Beatty versus Waub or the Second Circuit's approach is finality. Well, you get finality in either event. Finality comes sooner in one case rather than the other. Correct. Exactly. So you're talking about speed rather than finality. You want finality quicker. Exactly. Yes. Exactly. So, and this case is a good explanation of why we need to draw a line sooner rather than This Mr. Sugarman is Mr. Balbuena's fourth attorney. He had a trial attorney. He actually had an interrogation expert. He had an appellate attorney. And then he had an attorney assisting him in the district court. You know, he finally got a good lawyer. Right. So every single attorney that gets a case, besides every other attorney, did a bad job and has a whole new way to look at it. And, you know, that may be, but I think that I really want you to focus more on Judge Fletcher's question, which is, if we were writing on a clean slate, why as a policy matter is it better to sort of stop the clock after the district court rules as opposed to stopping the clock after the whole first case is done with our ruling or theoretically the Supreme Court denying cert? I don't understand why as a policy matter cutting it off after the district court rules makes more sense than cutting it off after we rule. Well, then it would be a question of cutting it off after the Supreme Court rules. And then a lot of times these cases go back and forth. And there is an opening for, in Cheng, actually, which is a different fact pattern, in actually Santorelli, a number of cases where the courts of appeal have said the motion to dismiss is untimely, was wrongly decided, and then they send it back to the district court. It goes back all over again. So then it's open. The problem is, is this is years later. So Mr. Balboa's trial was 11 years. But let's talk about timeliness. We have lots of timeliness rules with respect to habeas, assuming that the initial petition is filed timely. And that may be years later because of the time it took an appeal through the state system. I mean, the fact that it was years later is just built into the habeas system. We get that. And the amendment, assuming that we adopt a Second Circuit rule, that time isn't going to run sort of freely and forever, or to use a different metaphor, it's not a floodgates problem because we've got mail. That is to say, the amendment can't be just any old amendment. It's got to be an amendment that's fairly tightly tied to something that was already in the first petition, correct? That's correct. There's the relation back doctrine. Right. So you can't just add anything. Correct. You can't just throw anything in. Right. But this is throwing in a new legal theory. Well, it's a new legal theory, but it's based on the exact facts. I mean, the question is what happened during the questioning. Right. We have a DVD of it. But there was no Miranda claim made in any form in the initial habeas petition. And we're not writing on a blank slate with respect to policy. Don't we have to consider the statute? Don't we have to look at the ADPA? And what that statute says with respect to seeking permission from a court of appeals to file a successive petition. That's correct. There's a lot of various finality issues, and that's the whole second or successive piece of it. And the question is, at what line do we call it second or successive? Do we draw the line after the district court has ruled? And I also want to explain the piece of Beatty. In Beatty, he had raised, and I can't remember the number of issues. He had raised several issues, and the court of appeal granted the COA on one issue. And so it considered that a denial of the other issues. So it's not like the court of appeal in Beatty had ignored all of the other issues. It granted on one issue. So when it talks about we already ruled in this case once, it's not talking about a full decision with argument and so forth. The Beatty decision itself is describing its denial of the COA on all but one issue as its ruling. So this court could draw the line, okay, not the instant the district court proceedings are over, but it could draw the line at as soon as we narrow, you know, a COA is granted, a certificate of appealability is granted. That's where we draw the line. And in this case, Mr. Balboina, when the district court denied a COA on all issues, this court a year and a half later granted a COA on he brought up four issues or five issues, and this court denied it on four and granted on one. So a grant on one issue is an implicit denial on another. So it's not like this court had never seen this case before, and then a few months later a new claim is discovered. So at some point a line needs to be drawn, and Beatty has drawn that line. And this case is really indistinguishable from Beatty. So we're not on it. Well, I'm not sure it's indistinguishable, but I have to say that language I read from footnote one is, if I take it literally, it's pretty clear. It's to say you win. And I have to say my line of questioning is not so much as to whether or not Beatty controls, because I'm inclined to think that the language does and that you win. What I'm after is trying to figure out whether or not we should ask for en banc. I'm trying to figure out what the better rule is. If Beatty controls and you win, our only route is en banc, right? Correct. And really, I can't say anything else about the policy, because it's a policy question. And then going to the statement is, well, I also want to back up and talk a little bit about, I know it makes sense that the petitioner wants this court's sympathy, which is understandable, but I just want to point out a few things, just looking at the global scope of this case, in that he is 16. He said he was 16. I don't want to beat that to death, but he did say he was 16 originally, and many times his attorneys have said he's 16, and then sometimes they say he's 15. So, anyway, that's that. I've dealt with 15-year-olds and 16-year-olds, and they look pretty much the same to me. And I don't want to go on and on about it, but there it is. And I also want to point out, he says on and on about how it's a 72-years-to-life sentence. Well, you know, because he is under, at this point I think it's 26, but he is up for parole in 10 years. He basically has a 25-years-to-life sentence. So going on and on about the 72-years-to-life sentence isn't really saying what the reality of this is. And none of this has to do with voluntariness necessarily. It doesn't. But I just want to point out, when we're talking about the global picture of this case, I also want to talk about the interrogation itself. This court really, I would encourage the court to look at the DVD. I think we watched it. Okay, okay. And so you know how long it took. The whole thing was an hour and a half. Yeah, it wasn't very long. Okay. And then again, the standard is. And the officers do kind of their normal misleading stuff. I mean, this is how they interrogate. I mean, I've seen an awful lot of these. This is much less egregious than most. Right. So thank you for taking that.  that this is a remarkably non-threatening atmosphere for a police interrogation, perhaps quoting the state court in that. But, I mean, I watched it. It's 90 minutes. And, you know, it is what it is. Right. So I can't say anything about this. But as long as we're kind of talking about this more general thing, it's pretty clear from the nature of the wounds that killed the victim. He shot through the windshield, I gather, three shots. And the wounds come from the side. So for what it's worth, he probably is not the killer. Yeah, he shot four times. But through the windshield. Right. Going way back. But the wounds are in the side of the head and the side of the neck. Was the left side, right. Right. Almost certainly the guy who's right at the driver's window is the guy who killed him. There aren't a lot of factual disputes in this case, really. He had five bullet wounds, right? Right. The victim did. Right. What I meant is that Balbuena shot four times. Right. The 32. And it was a smaller gun. And it was towards the front. And the one bullet found in him was the 9, right? Correct. We've clearly got culpability here. I mean, there's no question about that. Right. And, you know, in 10 years, they'll be looking at that. Well, I don't want to go too deeply into the chances of getting parole in the California system. You know as well as I do that it doesn't happen very often with a crime like this. And things are changing in California as well, as everybody knows. But that, again, has nothing to do with what we're here for. I got it. Okay. All right. If there's no other questions, thank you. Thank you. Thank you. Since many of your questions have focused on the question of second or successive, I'll focus my attention there. Of course, we'll take any question the Court has. Let me specifically refer the Court to my reply brief at footnote 3 because the Court asked about other circuits. And almost all the circuits she cite, in fact, have a more complicated rule. For example, if you adopt her finality rule, the Eleventh Circuit rule wouldn't be consistent with it because the Eleventh Circuit allows a denial in the district court and then still can file a supplemental petition so long as the time for appeal has not run. But the decision is final. The question the Court asks is what should be the policy, assuming you had a free shot, so to speak. And I would submit to you, as the Court has noted, there are many restrictive rules on habeas. It is a labyrinth for most defendants to navigate. There are many cases in which they can go nowhere. The question is, as this Court should do, is if the district court rules, and on the direct appeal, which is wherever you are now, the appeal is pending before you, being heard today, should he get a chance to go back? And if he goes back, it's a very difficult road. He's got to first show extraordinary circumstances under Rule 60B and then meet the requirements of Melee for amendment. There are very few cases that will meet that. Mr. Bedwine, in fact, does. So I would submit to you that that's appropriate. And then with regard to the later statement in Goodram, I would direct the Court to what this is what the Court itself said. As a general principle, the rule that emerged is that the petition will not be deemed second or successive. At a minimum, an earlier filed petition has been finally adjudicated. Thus, when a petitioner files a new petition while his first petition remains pending, courts have uniformly held that the new petition cannot be deemed second or successive. I submit to you that's the general rule. There are some to the contrary, but I don't believe that Beatty forecloses the decision in favor of the defendant here. I would respectfully remind the Court, this circuit has twice held that what happened to Mr. Bedwine, in fact, violates Moran and the Constitution. No court has ruled on that. The lawyers from before, to which the Attorney General referred, all wrote declarations saying, I was incompetent. I should have seen that. No court has ever ruled on it. If this Court rules against him on this issue of Woods and Goodram, then no court ever will. As for her comment about, well, he'll get out in 10 years, that's — I would like that to be true. His family is in the audience. They would like that to be true. But the reality is very few people get released. I would ask the Court, in fact, to conclude. May I make one last comment? With regard to his statement, the Court referred to the fact that in the tape, which you've all watched, it's not threatening. That's not the only standard. As this Court knows, any kind of a promise, implied or otherwise, slight or otherwise, is sufficient. This is not a case where they beat him with a rubber hose or figuratively did so. But they, in fact, made promise to him throughout it. And like in Brown or in Rays, I would ask the Court to look back at its own decision in Rays from two years ago. The question is, collectively, what do we have? And I think here the Court of Appeals did not fairly come to the conclusion it's an unreasonable decision. Thank you, Your Honor. Thank you very much. Thank both sides for your very helpful arguments. Balbueno v. Sullivan, submitted for decision.
judges: W. Fletcher, Bennet, Bade